## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **LAWRENCE G. WELLS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | No.  05-2242-CM |
| ) | |
| **ACCREDO HEALTH GROUP, INC.;** ) | |
| **a/k/a ACCREDO HEALTH** ) | |
| **INCORPORATED; a/k/a ACCREDO** ) | |
| **THERAPEUTICS, INC.,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## MEMORANDUM AND ORDER

Plaintiff Lawrence G. Wells brings this diversity action against his former employer, defendant Accredo Health Group, Inc., claiming that (1) defendant terminated plaintiff's employment in violation of Kansas public policy; and (2) in terminating plaintiff's employment, defendant breached an implied contract under Kansas law.  Defendant filed a motion for summary judgment (Doc. 49).  For the following reasons, the court grants the motion.

## I. FACTUAL BACKGROUND[1]

The following facts are highly-summarized and are intended to serve as background information. As needed, the court will supply additional facts throughout this Memorandum and Order.

Plaintiff became a registered nurse in 1986. Defendant hired plaintiff in April 2002 as a nurse counselor in defendant's patient call center. As a nurse counselor, plaintiff responded to patient inquiries using manufacturer-approved scripts and material related to Kineret, a rheumatoid arthritis drug therapy. Plaintiff changed positions in February 2003, but returned to the call center in December 2003. At that time, nurse counselors were responding to patient calls relating not only to Kineret, but also to Enbrel, which was another rheumatoid arthritis drug therapy.

On January 22, 2004, plaintiff instructed two patient callers to use a drawer and/or a door jamb to remove the needle cover to their medication. Plaintiff's instruction was outside of the manufacturer's scripted response, and therefore violated defendant's call protocol. Cindy Patterson, plaintiff's supervisor, determined that plaintiff's actions warranted a written warning and performance improvement plan.

On January 23, plaintiff forwarded an e-mail to his team lead for the evening of January 22, Shari Pitts, which indicated that he had been maintaining e-mail communication with the parent of a patient. Nurse counselors are instructed that they should not e-mail patients or their family members without specific approval or consent.

---

[1] The court construes the facts in the light most favorable to plaintiff as the non-moving party pursuant to Fed. R. Civ. P. 56. The parties proposed a number of proposed uncontroverted facts which are not recounted here. The court has included only those facts which are relevant, material, and properly supported by the record. Notably, many of the facts proposed by the parties are not material to the court's decision here.

Ms. Patterson discussed plaintiff's performance improvement plan with plaintiff on January 27. The plan included additional training. Ms. Patterson also determined that plaintiff should relocate cubicles to be near team leads, who could provide plaintiff with information and answers to his questions. During the meeting, plaintiff mentioned that he did not believe that he had received sufficient training with respect to the drug Enbrel. Plaintiff had protested several times during the month of January 2004 that he had insufficient training to handle Enbrel calls.

On January 28, plaintiff found an outline of the Enbrel training agenda on his desk with a note from his team lead, Anne Barnhill-Rabin, which stated: "Larry, Please sign and return to me. Ann BR." Plaintiff never signed the document. At some point during the week of January 27, plaintiff told Ms. Patterson and Edward Culliton, one of Ms. Patterson's superiors, that he was being asked to sign off on a false acknowledgment concerning completion of training.

Plaintiff had another meeting with Ms. Patterson on January 30. Ms. Patterson testified in deposition that during the meeting, plaintiff refused to move to the new cubicle as instructed; that he stood and became loud, in an intimidating manner; and that she had to ask him to leave her office three times. Ms. Patterson reported plaintiff's conduct to Mr. Culliton and Lisa Neighbors, another of her superiors.

Mr. Culliton and Ms. Neighbors met with plaintiff later that day and suspended him from employment. Ms. Neighbors then met with Ann Lundy, Area Vice President, and they determined that plaintiff's conduct warranted termination. On February 4, defendant terminated plaintiff's employment.

## II. STANDARD FOR JUDGMENT

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In

-3-

applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III.  DISCUSSION

### A.  Retaliatory Discharge Claim

In his retaliatory discharge claim, plaintiff alleges that defendant fired him because plaintiff had repeatedly sought proper training and refused to sign a document which falsely represented that plaintiff had completed the training. Plaintiff claims that his termination violates Kansas public policy because his actions were protected by the Kansas Nurse Practice Act ("KNPA"), Kan. Stat. Ann. §§ 65-1113 *et seq.* The KNPA provides that nurses may be disciplined by the state where they are guilty of fraud, deceit, or unprofessional conduct. *See* Kan. Stat. Ann. § 65-1120. Kansas regulations further provide that nurses are not to assume "duties and responsibilities within the practice of nursing without making or obtaining adequate preparation or maintaining competency." Kan. Admin. Reg. 60-3-110(b).

Kansas follows the at-will employment doctrine; employment relationships are terminable at the will of either party, absent an express or implied contract, or where public policy dictates otherwise. *See Flenker v. Willamette Indus., Inc.*, 967 P.2d 295, 298 (Kan. 1988); *Estate of Pingree v. Triple T Foods, Inc.*, – F. Supp. 2d –, 2006 WL 1302356, at *11 (D. Kan. May. 11, 2006) (citation omitted). To prevail on a retaliatory discharge claim, a plaintiff must show "either (1) that Kansas courts have recognized [his] retaliatory discharge claims as exceptions to the employment at will doctrine or (2) that Kansas public policy protects the conduct on which [his] . . . claims are based and that [he has] no alternative state or federal remedy." *Estate of Pingree*, 2006 WL 1302356, at *11 (citation omitted); *see also Flenker*, 967

-4-

P.2d at 297; *Conner v. Schnuck Mkts., Inc.*, 121 F.3d 1390, 1399 (10th Cir. 1997). Kansas courts only recognize three public policy exceptions to the at-will employment rule: (1) when an employer terminates an employee because he asserted workers' compensation rights; (2) when an employer terminates an employee for whistleblowing; and (3) when an employer terminates an employee for exercising his rights under the Federal Employers Liability Act. *Hysten v. Burlington N. Santa Fe Ry. Co.*, 108 P.3d 437, 440, 443-44 (Kan. 2004). The whistleblower exception only applies where the discharge "seriously contravenes public policy." *Aiken v. Bus. & Indus. Health Group, Inc.*, 886 F. Supp. 1565, 1573 (D. Kan. 1995) (citing *Cain v. Kan. Corp. Comm'n*, 673 P.2d 451, 454 (Kan. 1983)). Public policy cannot be determined on a subjective basis, but "should be so thoroughly established as a state of public mind so united and so definite and fixed that its existence is not subject to any substantial doubt." *Palmer v. Brown, M.D.*, 752 P.2d 685, 689 (Kan. 1988).

Plaintiff appears to argue that his claims fall within the whistleblower exception, although he also may be asserting that they otherwise constitute a violation of public policy. Either way, plaintiff must show that Kansas public policy is at issue.[2]

Plaintiff's claims fail for several reasons. First, the Kansas Supreme Court has held that the KNPA does not provide a public policy exception to the employment-at-will doctrine. *See Goodman v. Wesley Med. Ctr., L.L.C.*, 78 P.3d 817, 823 (Kan. 2003). In *Goodman*, the court held that "because the KNPA

---

[2] To establish a retaliatory discharge case for whistleblowing, a plaintiff must show: a reasonably prudent person would have concluded the employee's co-worker or employer was engaged in activities in violation of rules, regulations, or the law pertaining to public health, safety, and the general welfare; the employer had knowledge of the employee's reporting of such violation prior to discharge of the employee; and the employee was discharged in retaliation for making the report.

*Palmer*, 752 P.2d at 685.

-5-

does not provide definite or specific rules, regulations, or laws, it cannot be the basis for a retaliatory discharge claim. *Id.* Based on *Goodman*, plaintiff has no cause of action, even assuming that defendant did, in fact, terminate him because he requested training and refused to sign a false document.

Second, even if the court were to assume that defendant's acts violated its own policies, violation of an employer's own policies is insufficient to serve as a public policy exception. *See, e.g., Herman v. W. Fin. Corp.*, 869 P.2d 696, 881-82 (Kan. 1994) (holding that reporting of internal policy violations did not violate "rules, regulations or the law pertaining to public health, safety and the general welfare"); *Baker v. Wal-Mart Stores, Inc.*, No. 90-2231-O, 1991 WL 158895, at *3 (D. Kan. July 8, 1991) (granting summary judgment where plaintiff contended that he was fired for reporting company policy violations committed by a co-worker).

And third, plaintiff's refusal to sign the training document does not constitute whistleblowing. *See McCauley v. Raytheon Travel Air Co.*, 152 F. Supp. 2d 1267, 1274-75 (D. Kan. 2001) ("Refusal to perform a task, even in the belief that it is unlawful, does not constitute a protected activity under Kansas public policy.").

Absent a clear mandate of public policy as the foundation for plaintiff's claims, plaintiff cannot establish a retaliatory discharge case. *See Goodman*, 78 P.3d at 823 (citing *Palmer*, 752 P.2d at 685). The court grants summary judgment on this claim.

## B. Breach of Implied Contract Claim

In his breach of implied contract claim, plaintiff alleges that defendant assured him that it would use progressive discipline and would allow plaintiff to complete his performance improvement plan before terminating him. Plaintiff further alleges that defendant promised that it would not tolerate fraudulent activity

in the workplace. According to plaintiff, defendant therefore created an implied contract not to terminate plaintiff (1) without progressive discipline, or (2) for protesting fraudulent activities. Plaintiff bases these claims on portions of defendant's employee handbook. The handbook discusses the progressive discipline policy at some length, and expressly requires all employees to avoid "falsifying records, qualifications or time documents." Defendant's handbook also states that all employment is at-will, and that any employee may be terminated at any time with or without cause.

In order to survive summary judgment on an implied contract claim, a plaintiff must show more than his own unilateral expectation of continued employment. *Conyers v. Safelite Glass Corp.*, 825 F. Supp. 974, 977 (D. Kan. 1993). He must show that the parties had a mutual intent to create a legitimate expectation of continued employment. *See id.* Unbargained-for personnel policies alone cannot form the basis of an implied contract. *Farthing v. City of Shawnee*, 39 F.3d 1131, 1138 (10th Cir. 1994) (citing *Brown v. United Methodist Homes for the Aged*, 815 P.2d 72, 83 (Kan. 1991)). But the question of whether an implied contract exists is normally an issue of fact because it rests on the parties' intent. *See Brown*, 815 P.2d at 80 (citation omitted).

The court finds that defendant's employee handbook did not create an implied contract of continued employment. The portions of the handbook that plaintiff cites are consistent with defendant's statement that all employment is at-will.[3] Specifically, the handbook provides:

---

[3] For this reason, *Wilkinson v. Shoney's, Inc.*, 4 P.3d 1149 (Kan. 2000), does not require a different result. Plaintiff cites *Wilkinson* for the proposition that a "disclaimer in an employer's manual is not determinative as a matter of law on the issue of whether there is an implied contract of employment where the disclaimer is expressly or impliedly contradicted by other provisions in the manual, statements made by the employer, or other documents; it is one factor to be considered by a properly instructed jury." 4 P.3d at 1163-64. Because the disclaimer here is not inconsistent with any other evidence in the record, the court finds that *Wilkinson* is distinguishable.

> Employment is at the will of either the Associate or the Company. The associate may terminate his/her employment at any time. Similarly, the Company may terminate the associate's employment at any time, with or without cause. Termination of employment by the Company may occur without prior notice and without following any system of progressive discipline. No contract for employment is created by any statement, policy or procedure in this handbook or any other Company policy statement, policy book handbook, guideline, practice or procedure. No oral statements by any agent of the Company create a binding contract of employment. All employees are employees at will, terminable at any time, with or without cause, and no provision, policy or procedure in the handbook is intended to create a contract with any employee.
>
> The policies and procedures described in this Handbook, and in Company booklets and communications, are intended as guidelines and are not a contract or promise of continued employment or any other type of promise, and are not binding on the Company.
>
> The Company reserves the right at any time without notice to modify, revoke, suspend, terminate, or change any and all of the terms of this Handbook, or any other plan, policy, guide or procedure in whole or in part without having to consult or reach agreement with anyone.

In Kansas, a statement in an employee handbook generally does not, as a matter of law, preclude the formation of an implied contract. *Morriss v. Coleman Co.*, 738 P.2d 841, 849 (Kan. 1987). It is only one factor to consider in determining whether an implied contract existed. *Id.* In the instant case, however, plaintiff signed at least three documents before or at the time he began his employment with defendant, each of which acknowledged that plaintiff's employment was at-will. Plaintiff does not claim that he never saw the disclaimer, and he has offered no evidence of acts by defendant that are inconsistent with an at-will employment relationship. Absent other evidence, the provisions that plaintiff cites fail to establish an implied contract of continued employment.[4] *See Brown*, 815 P.2d at 82-83; *Litton v. Maverick*

---

[4] Plaintiff suggests that comments by Ms. Patterson and Ms. Neighbors about defendant's progressive discipline policy indicate that defendant routinely followed every step of the discipline process. The court has reviewed the deposition testimony cited by plaintiff, and finds that plaintiff misstates the testimony and overestimates its significance. Likewise, plaintiff cites Ms. Patterson's deposition testimony

(continued...)

*Paper* Co., 388 F. Supp. 2d 1261, 1293-94 (D. Kan. 2005) (citations omitted); *McCauley v. Raytheon Travel Air Co.,* 152 F. Supp. 2d 1267, 1273 (D. Kan. 2001) (holding that a manual giving nine reasons for termination and also stating that employment was at-will did not support finding of implied contract); *Wood v. City of Topeka, Kan.,* 90 F. Supp. 2d 1173, 1193-94 (D. Kan. 2000) (holding that the employee handbook alone, without other evidence, failed to show that the employer intended to create an implied employment contract); *cf. Morriss,* 738 P.2d at 849 (holding that the provisions of a manual, coupled with statements by supervisors, were sufficient to create a fact question as to whether an implied contract existed); *Anglemyer v. Hamilton County Hosp.,* 58 F.3d 533, 538 (10th Cir. 1995) (holding that a personnel handbook, coupled with evidence of the employer's practices, created a question of fact).

With respect to plaintiff's claim that he should have been allowed to complete the progressive discipline process, the court also finds it significant that the disciplinary provisions on which plaintiff relies specifically state that defendant may require "some or all" of the progressive discipline steps. In other words, the provisions make no commitment that every employee must go through the entire disciplinary process before being terminated. To the contrary, the provisions specifically disclaim such entitlement:

> The Company may utilize a system of progressive discipline, at its sole discretion, in cases of misconduct or unacceptable performance. The use of such a system does not waive either the Company's or your right to terminate employment at any time with or without cause.
>
> The progressive discipline process may include some or all of the following stages, and, where appropriate, may be combined with an action plan:
>      i.    Corrective counseling/verbal warning

---

[4] (...continued)
to suggest that employees, as a matter of practice, were "empowered" to decline to engage in dishonest acts. Plaintiff again construes Ms. Patterson's testimony liberally, and the court does not believe that it constitutes "other evidence" that the parties intended to enter into an implied contract of continued employment.

        ii.        Formal reprimand/written warning
        iii.       Final warning
        iv.       Termination

Disciplinary action may begin at an advanced stage of the process or may result in immediate termination based upon the nature and severity of the offense, the associate's past record with the Company and any other relevant circumstances.

Based on the plain language of the disciplinary process provisions, plaintiff's argument that defendant was bound to complete the entire process once defendant began the process is unavailing. Defendant was under no obligation to continue the progressive discipline process.

**IT IS THEREFORE ORDERED** that Defendant Accredo Health Group, Inc.'s Motion for Summary Judgment (Doc. 49) is granted.

Dated this 11th day of July 2006, at Kansas City, Kansas.

        **s/ Carlos Murguia**
        **CARLOS MURGUIA**
        **United States District Judge**